OPINION OF THE COURT
Norman C. Ryp, J.
"We sail the ocean blue and our saucy ship’s a beauty; We’re sober men and true, and attentive to our duty.” (H. M. S. Pinafore, Act I, Gilbert and Sullivan [1878].)
"For she is such a smart little craft Such a neat little, sweet little craft Such a bright, little tight little Slight little, light little Trim little, slim little craft”. (Ruddigore II, Act II, Gilbert and Sullivan [1887].)
A. INTRODUCTION
FACTS
In this small claims action, plaintiff-claimant seeks to recover $1,000 for property damage to his 17-foot wooden "Thistle” sloop sailboat ("Old Rarity”) that resulted from defendant’s alleged negligence in a collision between Old Rarity, manned by plaintiff and crew of two, and defendant’s "Rhodes-19” fiberglass sailboat ("Stinger”), manned by his 13-year-old son and crew of two, on August 25, 1978 in Manhasset Bay, Long Island, New York. At the time, both vessels were sailing at a speed of 12 knots (about 14 m.p.h.) toward the starting area of the Manhasset Bay Race, with Stinger on the port side of Old Rarity.
The parties apparently agree that The Yacht Racing Rules, part IV, of the International Yacht Racing Union (IYRU) or National Association or North American Yacht Racing Union (NAYRU) apply. Such is as recognized by the United States Coast Guard, United States Department of Transportation, of which the court, under CPLR 4511 (subd b), takes judicial notice.
B. PARTIES CONTENTION
Plaintiff contends that the negligence of defendant’s infant bailee, in the operation of defendant’s vessel, was the exclusive, proximate cause of the accident and that defendant is liable for the negligence of his infant-bailee son. Plaintiff specifically claims his Old Rarity was close hauled on a starboard tack with right of way over defendant’s Stinger *859 reaching on a port tack and bow colliding into Old Rarity hull, port side.
Defendant contends that any negligence is attributable to plaintiff (specifically both sailing on a port tack close reach, with defendant’s Stinger on the windward side and plaintiff’s Old Rarity on the leeward side about one boat length ahead); that negligent acts, if any, of his infant bailee cannot be imputed to defendant, under section 48 of the Navigation Law, because the collision occurred in tidewaters bordering on Nassau County.
Specific claims are based upon testimony and each parties’ "Accident Description” set forth in respective boating accident reports dated September 12, 1978 (plaintiff) and August 26, 1978 (defendant) duly filed with the New York State Department of Parks and Recreation, deemed PX No. 1 and DX No. A.
The parties differ as to which NAYRU or IYRU rules apply.
C. CLAIMED APPLICABLE NAYRU OR IYRU RULES ARE AS
follows:
"Rule 32 — Avoiding Collisions.
"A right-of-way yacht which fails to make a reasonable attempt to avoid a collision resulting in serious damage may be disqualified as well as the other yacht.
"Section B — Opposite Tack Rule.
"Rule 36 — Fundamental Rule:
"A port-tack shall keep clear of a starboard tack yacht”.
Appeal No. 32 decision states: "We hold when there is reasonable doubt as to the ability of a port tack to cross ahead of a starboard-tack yacht (1) the starboard-tack yacht is entitled to bear away and protest, and (2) the burden of proof rests on the port-tack yacht to prove that she would have cleared the starboard-tack yacht.”
"Rule 41 — Changing Tacks — Tacking and Gybing.
"41.2 — Transitional.
"A yacht shall neither tack nor gybe into a position which will give her right of way unless she does so far enough from a yacht on a tack to enable this yacht to keep clear without having to begin to alter her course until after the tack or gybe has been completed.
"41.3 — Onus.
*860 "A yacht which tacks or gybes has the onus of satisfying the race committee that she completed her tack or gybe in accordance with rule 41.2”.
D. ISSUES
1. Whether defendant’s infant-bailee son was negligent in a manner that was a proximate cause of the collision and property damage?
2. If so, whether defendant is liable for property damage resulting from his infant-son bailee’s negligence if the accident occurred in "navigable waters” or tidewaters?
3. If so, whether defendant is liable for property damages resulting from the imputed negligence of his infant-bailee son whom defendant entrusted with the use of subject sailboat?
4. Whether plaintiff was negligent in a manner that was a proximate cause of the collision and property damage?
E. FINDINGS OF FACT AND APPLICABLE LAW
Pursuant of section 48 of the Navigation Law, a boat owner is liable for property damages incurred due to the negligent use or operation of his vessel in "navigable waters” by any person having the owner’s express or implied permission. Defendant herein concedes that he expressly permitted his infant bailee to use and operate the Stinger. The court has determined, in fact, the water level at the accident site toward the center of Manhasset Bay to between IO-V2 and 11 feet, and there was no evidence of tide ebb and flow (cf. People v Abrams, 82 Misc 2d 979) and held that subject accident occurred in navigable waters as defined by section 2 of article 1 of the Navigation Law. (See St. Lawrence Shores v State of New York, 60 Misc 2d 74, 78; court exhibit No. 1, US Dept, of Commerce, Nat. Oceanic and Atmospheric Admin., Nat. Ocean Survey Chart No. 12366 [16th ed, June 17, 1977].)
Therefore, the court finds, in fact and law, under section 48 of the Navigation Law, defendant may be liable for property damages plaintiff sustained due to the imputed negligence of his infant bailee.
Furthermore, absent the applicability of section 48 of the Navigation Law, defendant’s liability to plaintiff can be grounded upon his negligent entrusting of a "dangerous instrumentality” (i.e., sailboat Stinger) to his 13-year-old son. Although parents are not, as a general rule, vicariously liable *861 for their children’s conduct, a parent does have an affirmative duty to protect third parties (as distinct from the child) from damages due to the possession, use or operation of dangerous instrumentalities by his minor child. (Nolechek v Gesuale, 46 NY2d 332; Heritage Mut. Ins. Co. v Hunter, 63 AD2d 200; Masone v Gianotti, 54 AD2d 269.)
A sailboat may be deemed a "dangerous instrumentality” upon examination of its size, weight, shape and operating potential. Defendant’s vessel was a 1969, fiberglass Rhodes 19 sailboat, manufactured by O’Day, 19 feet long, 5 feet width beam, 2-Vi feet depth, weighing 1,000 to 1,200 pounds. Plaintiff’s boat was a smaller and lighter model, a 1950 wood Thistle model sailboat made by Douglass and McLeod, 17 feet long, 6 feet width beam, 3 feet depth, weighing 550 pounds.
The specifications of defendant’s boat clearly indicate that the Stinger was a substantial sailing vessel, patently capable of inflicting damage to third parties through negligence in its use or operation. As such it is comparable to other items held to be "dangerous instrumentalities” when entrusted to the use, operation or possession of children: motorized bikes (Lalomia v Bankers & Shippers Ins. Co., 35 AD2d 114), "BB” guns (Lichtenthal v Gawoski, 44 AD2d 771), motorcycles (Nolechek v Gesuale, supra), motorboat or airplane (Neumann v Shlansky, 58 Misc 2d 128, affd 63 Misc 2d 587, affd 36 AD2d 540). (See Prosser, Torts [4th ed], § 123.)
For other common-law theories of liability, i.e., "family purpose” strict liability or agency, see Annotation: Liability of Owner of Powerboat for Injury or Death Allegedly Caused by One Permitted to Operate Boat by Owner (71 ALR3d 1018-53).
FACTS
1. Under these facts, the court finds subject sailboat to be a "dangerous instrumentality.” After considering all the facts and circumstances herein, including defendant’s claim, on his boating accident report, that his son had 100 to 500 hours’ experience operating this type of vessel, defendant’s admission that his son was sailing in this particular area for the first time and the fact defendant was not on the boat or anywhere near the accident site to supervise or control infant bailee, the court finds sufficient evidence to support a finding of negligent entrustment of a dangerous instrument to an infant.
2. The court finds insufficiently credible evidence that Old *862 Rarity was changing its tack or gybing for right of way at or just before subject collision impact so rule 41.1-3 of the NAYRU or IYRU is inapplicable therein.
3. Furthermore, the court finds that plaintiffs Old Rarity, on the starboard side, if not tack, had the right of way over defendant’s Stinger, under rule 36 of the NAYRU, or IYRU, at the time of the accident. However, Old Rarity, having the right of way, "close hauled” on his starboard tack, thus making it very difficult for defendant’s Stinger to avoid the collision, contrary to rule 31 of the NAYRU or IYRU.
F. DAMAGES
CPLR 1411, applicable to all causes of action for injury to property accruing on or after September 1, 1975 (CPLR 1413), requires a rule of comparative negligence be applied to calculation of damages to be awarded herein.
It should be noted that the same common-law rule of comparative negligence is applicable under admiralty law for property damages in a maritime collision. (See United States v Reliable Transfer Co., 421 US 397.)
The court finds, in fact and law, that culpable conduct by plaintiff was responsible for 25% of the fair and reasonable damages found sustained in the sum of $1,000 and hereby proportionately diminishes, by the sum of $250, the amount of damages otherwise recoverable by plaintiff proportionately.
The court further commends the parties and counsel for this nautical education.
CONCLUSION
Accordingly, plaintiff may enter judgment in the sum of $750, plus interest, from August 25, 1978 (date of accident), together with the costs and disbursements of this action.