# IN THE SUPREME COURT OF TEXAS

No. 15-0298

4FRONT ENGINEERED SOLUTIONS, INC., PETITIONER,

v.

CARLOS ROSALES, INDIVIDUALLY, AND ROSA MEJIA, AS NEXT FRIEND OF CARLOS
ROSALES, JR., RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS

**Argued October 4, 2016**

JUSTICE BOYD delivered the opinion of the Court.

A subcontractor sued a premises owner for personal injuries the subcontractor suffered while working with a contractor on the owner's premises. A jury found that all three parties negligently caused the accident and assigned seventy-five percent of the responsibility to the owner, fifteen percent to the contractor, and ten percent to the subcontractor. The premises owner appealed, challenging the judgment on several alternative grounds. We conclude that no evidence supports the jury's liability findings against the premises owner. We therefore reverse the court of appeals' judgment, render judgment in favor of the premises owner, and remand the case to the trial court for further proceedings.

# I.
# Background

4Front Engineered Solutions owns a distribution warehouse in Pharr, Texas. 4Front's warehouse and safety manager, Antonio Ornelas, contracted with Francisco Reyes, a licensed electrician, to repair a lighted sign that hung on an exterior wall about twenty feet above the warehouse's entrance. Reyes had previously performed services for 4Front without incident, sometimes working at heights above twenty feet and usually using equipment he borrowed from 4Front. For this job, Reyes subcontracted with Carlos Rosales, another electrician, to assist him.

Reyes testified that when Ornelas called him about repairing the sign, Reyes asked if he could use a "scissors lift"[1] that he had previously used at the warehouse, and Ornelas told him he could. When Reyes and Rosales arrived to begin the job, however, Ornelas told Reyes that the scissors lift was not available but that Reyes could use 4Front's stand-up forklift instead. Reyes had previously used the same forklift on another job inside 4Front's warehouse. Reyes testified that Ornelas asked Reyes if he was able to operate the forklift to reach and repair the sign, and Reyes (who speaks limited English) answered, "I can move it, but slowly."

Reyes and Rosales worked without incident for three to four hours on the first day and returned two days later to complete the job. On both days, Reyes operated the forklift on a sidewalk under the sign in front of the warehouse. Rosales stood in a "man basket" attached to the forklift as Reyes lifted and positioned the basket so that Rosales could reach the sign. On the second

---

[1] A scissors lift is a platform atop a set of crisscrossed folding supports that rises vertically by hydraulics or pneumatics.

morning, as Rosales was lifted up to the sign, Reyes drove the lift off the sidewalk's edge, causing the lift to topple over. Rosales fell and suffered severe injuries.

Rosales sued 4Front and Reyes for negligence, negligence per se,[2] gross negligence, and premises liability. A jury found that 4Front negligently entrusted the forklift to Reyes and negligently failed to warn about or make safe a dangerous condition on its premises. The jury also found that Reyes and Rosales were negligent and assigned seventy-five percent of the responsibility to 4Front, fifteen percent to Reyes, and ten percent to Rosales. The jury determined that Rosales's actual damages totaled roughly $8 million. Finally, the jury found that 4Front was grossly negligent and awarded $5 million as exemplary damages. The trial court reduced the amount of exemplary damages but otherwise entered judgment based on the jury's verdict. The court of appeals reversed the gross-negligence finding, struck the award of exemplary damages, and affirmed the remainder of the judgment. --- S.W.3d ---. We granted 4Front's petition for review.

4Front raises several arguments. Challenging liability on both the negligent-entrustment and premises-liability claims, 4Front argues that the court of appeals erred by holding that Chapter 95 of the Texas Civil Practice and Remedies Code does not apply to Rosales's claims.[3] Focusing

---

[2] 4Front moved for summary judgment on Rosales's negligence per se cause of action, which the trial court granted.

[3] *See* TEX. CIV. PRAC. & REM. CODE §§ 95.001–.004 (addressing property owners' liability for acts of independent contractors). Chapter 95 applies to a claim against a property owner "that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement." *Id.* § 95.002(2); *see Ineos USA, LLC v. Elmgren*, --- S.W.3d --- (Tex. 2016). When Chapter 95 applies, "it grants the property owner additional protection by requiring the plaintiff to prove that the owner 'had actual knowledge of the danger or condition,' so the owner is not liable based merely on what it reasonably should have known." *Ineos*, --- S.W.3d at ---.

3

on the negligent-entrustment theory, 4Front argues that (1) it owed no legal duty to Rosales because it did not control the manner in which Reyes operated the forklift;[4] (2) negligent entrustment applies only to automobiles and similar vehicles, not to industrial equipment like a forklift;[5] (3) the trial court erred by admitting evidence of certain regulations and an interpretation letter issued by the federal Occupational Safety and Health Administration (OSHA); and (4) no

---

[4] Generally, every person has a duty not to negligently entrust a vehicle to another. *See Williams v. Steve's Indus., Inc.*, 699 S.W.2d 570, 571 (Tex. 1985). But a premises owner "does not have a duty to see that an independent contractor performs work in a safe manner" unless the owner retains or exercises "supervisory control" over the contractor's work. *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985); *see also Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 225–26 (Tex. 1999) ("[A] premises owner may be liable when the owner retains the right of supervisory control over work on the premises."). We have not previously addressed whether the supervisory-control requirement applies to a claim that a premises owner negligently entrusted its vehicle to its independent contractor.

[5] We have recognized liability for conduct at least akin to negligent entrustment in a case involving the rental of a horse. *See Dee v. Parish*, 327 S.W.2d 449, 452 (Tex. 1959) (holding that, if stable owner "knew or should have known that petitioner, because of her youth and inexperience, was likely to use the horse in a manner involving unreasonable risk of bodily injury to herself, he is subject to liability for her injuries caused thereby"). Other Texas courts have applied the negligent-entrustment theory to a variety of chattel. *See, e.g.*, *Donahue v. Polaris Indus., Inc.*, No. 02-11-00279-CV, 2012 WL 1034908, at *2 (Tex. App.—Fort Worth Mar. 29, 2012, pet. denied) (mem. op.) (all-terrain vehicle); *Bustamante v. Gonzalez*, No. 04-09-00481-CV, 2010 WL 2298841, at *4 (Tex. App.—San Antonio June 9, 2010, pet. denied) (mem. op.) (tractor); *Newkumet v. Allen*, 230 S.W.3d 518, 522 (Tex. App.—Eastland 2007, no pet.) (jet boat); *Prather v. Brandt*, 981 S.W.2d 801, 806 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (firearm); *Jamar v. Patterson*, 910 S.W.2d 118, 121 (Tex. App.—Houston [14th Dist.] 1995, writ denied) (dune buggy); *Monroe v. Grider*, 884 S.W.2d 811, 815 (Tex. App.—Dallas 1994, writ denied) (golf cart); *Kennedy v. Baird*, 682 S.W.2d 377, 379 (Tex. App.—El Paso 1984, no writ) (firearm). Other jurisdictions have done the same. *See, e.g.*, *Pritchett v. Kimberling Cove, Inc.*, 568 F.2d 570, 576 (8th Cir. 1977) (motorboat); *Collins v. Arkansas Cement Co.*, 453 F.2d 512, 515 (8th Cir. 1972) (cherry bombs); *Seale v. Ocean Reef Club, Inc.*, No. 13-21515-CIV, 2013 WL 4647218, at *8 (S.D. Fla. Aug. 29, 2013) (golf cart); *Fleming v. Stifolter*, 656 F. Supp. 2d 764, 771 (W.D. Tenn. 2009) (jet ski); *Adeyinka v. Yankee Fiber Control, Inc.*, 564 F. Supp. 2d 265, 286 (S.D.N.Y. 2008) (a "water jet" used to remove paint); *Nyhus v. Valentino*, 83 A.D.3d 802, 804 (N.Y. 2011) (motorized scooter); *W. v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 555 (Tenn. 2005) (gasoline); *Prudential Prop. & Cas. Ins. Co. v. Godfrey*, 169 A.D.2d 1035, 1035 (N.Y. 1991) (all-terrain vehicle); *Mikel v. Aaker*, 99 N.W.2d 76, 80 (Minn. 1959) (motor boat); *Barsness v. Gen. Diesel & Equip. Co.*, 383 N.W.2d 840, 842 (N.D. 1986) (crane); *White v. Inbound Aviation*, 82 Cal. Rptr. 2d 71, 78 (Cal. App. 1999) (airplane); *Hardsaw v. Courtney*, 665 N.E.2d 603, 608 (Ind. Ct. App. 1996) (dog); *Halverson by Boles v. Halverson*, 541 N.W.2d 150, 153 (Wis. Ct. App. 1995) (go-cart); *Ruano v. Water Sports of Am., Inc.*, 578 So. 2d 385 (Fla. Dist. Ct. App. 1991) (jet ski); *Buschlen v. Ford Motor Co.*, 328 N.W.2d 592, 594 (Mich. App. 1982), *aff'd sub nom. White v. Chrysler Corp.*, 364 N.W.2d 619 (Mich. 1984) (machine tooling dies); *Kunkel v. Alger*, 406 N.E.2d 402, 406 (Mass. App. Ct. 1980) (snowmobile); *Fredericks v. Gen. Motors Corp.*, 211 N.W.2d 44, 46 (Mich. App. 1973) (power press); *Cashell v. Hart*, 143 So. 2d 559, 561 (Fla. Dist. Ct. App. 1962) (motor boat); *LeSauvage v. Freedman*, 100 Misc. 2d 857, 861 (N.Y. Civ. Ct. 1979) (sailboat). *But see Wilbanks v. Brazil*, 425 So.2d 1123 (Ala. 1983) (finding no negligent entrustment of golf club to 8-year-old child). A few have applied it specifically to forklifts. *See Kitchens v. Dirtworks, Inc.*, 50 So. 3d 388, 389 (Miss. Ct. App. 2010); *Baird v. Power Rental Equip., Inc.*, 533 P.2d 941, 945 (Colo. App. 1975), *aff'd*, 552 P.2d 494 (1976).

4

evidence supports the jury's finding that Reyes was unlicensed, incompetent, or reckless, or that 4Front knew or should have known that he was. Challenging any responsibility based on premises liability, 4Front argues that there is no evidence that Rosales's injuries resulted from any condition or use of 4Front's premises.

We conclude that, even if Chapter 95 does not apply, even if 4Front owed a negligent-entrustment duty to Rosales, even if the negligent-entrustment theory applies to forklifts, and even if the OSHA evidence was admissible—all issues that we need not and do not decide in this case—no evidence supports the jury's findings of negligent entrustment or premises liability.

## II.
## Negligent Entrustment

When determining whether legally sufficient evidence supports a jury finding, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). The evidence is legally sufficient if it there is more than a scintilla of evidence on which a reasonable juror could find the fact to be true. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex. 2002); *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996).

To establish 4Front's liability for negligent entrustment, Rosales had to prove that:

    (1)    4Front entrusted the forklift to Reyes;

    (2)    Reyes was an unlicensed, incompetent, or reckless forklift operator;

    (3)    at the time of the entrustment, 4Front knew or should have known that Reyes was an unlicensed, incompetent, or reckless operator;

5

(4)     Reyes was negligent on the occasion in question; and

(5)     Reyes's negligence proximately caused the accident.

*See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 758 (Tex. 2007).[6] The first, fourth, and fifth elements are undisputed here: 4Front entrusted the forklift to Reyes, Reyes operated it negligently by driving it off the sidewalk's edge, and Reyes's negligence proximately caused the accident. But 4Front contends that Rosales offered no evidence that Reyes was an incompetent or reckless forklift operator or that 4Front knew or should have known that he was.

Rosales did not offer or rely on any affirmative evidence that 4Front "knew" that Reyes was incompetent or reckless. Instead, he relied on evidence that 4Front "should have known," and in fact would have known, that Reyes was incompetent or reckless if it had only inquired about Reyes's qualifications. In particular, Rosales points to evidence that (1) 4Front's manager, Ornelas, admitted that he was familiar with the forklift manual's instruction that all operators must be licensed and trained and that the forklift be operated only indoors on a flat surface; (2) Ornelas failed to ask Reyes if he was OSHA-certified or had any other formal training; (3) other 4Front employees said they would not have allowed Reyes to operate the lift for that job, at least not without first confirming his qualifications and training; and (4) an OSHA regulation and

_____

[6] *See also Schneider v. Esperanza Transmission Co.*, 744 S.W.2d 595, 596 (Tex. 1987) (citing *Williams*, 699 S.W.2d at 571; *Mundy v. Pirie–Slaughter Motor Co.*, 206 S.W.2d 587, 591 (Tex. 1947)). The reference to the requirement that the operator be "licensed" arises from cases alleging negligent entrustment of an automobile, and is based on the fact that Texas statutes require all drivers to be licensed and prohibit an owner from knowingly permitting an unlicensed driver to operate the owner's vehicle. *Mundy*, 206 S.W.2d at 589–90. Because the statutes' purpose is to "insure a minimum of competence and skill on the part of drivers for the protection of persons who might be injured or have their property damaged by negligent or reckless operation of motor vehicles on the highways," the vehicle owner's violation of the statute constitutes negligence per se. *Id.* But as the parties here concede, Texas law does not require a license to operate a forklift or prohibit an owner from permitting an unlicensed person from operating a forklift. The lack of a license is thus inapplicable in this case, and Rosales had to prove instead that 4Front knew or should have known that Reyes was "incompetent or reckless."

interpretation letter require that forklift owners must ensure that all drivers, including independent contractors, are adequately trained and certified.

We agree with 4Front that none of Rosales's evidence supports the jury's negligent-entrustment finding. In reaching this conclusion, we emphasize the important distinction between an operator who is "incompetent or reckless" and one who is merely "negligent." In a sense, the name "negligent entrustment" can be misleading, because the claim requires a showing of more than just general negligence. Reyes had to prove that Rosales operated the forklift negligently, but more than just that 4Front knew or should have known Rosales would or might operate the forklift negligently. Instead, he had to prove that Reyes was *incompetent* to operate the forklift or would operate it *recklessly*, and that 4Front knew or should have known of Reyes's incompetence or recklessness.

We find no such evidence in this record. There is no evidence that Reyes had ever previously caused or even had any accidents when operating a forklift or any similar equipment, or that he had ever recklessly or even negligently operated such equipment. *See Mayes*, 236 S.W.3d at 758 (finding no evidence that truck driver was, or that owner knew or should have known that he was, incompetent or reckless despite a prior citation for driving without liability insurance, a citation for "exceeding the speed limit by about five miles per hour," and a prior accident in which he rear-ended a vehicle at a stoplight); *Williams*, 699 S.W.2d at 575 (finding no evidence that truck driver "had any prior speeding tickets, had caused any accidents before this one, was not experienced at driving large trucks, . . . was in fact an incompetent or reckless driver, or that [defendant] had actual notice that [he] was a dangerous driver"); *id.* at 573–74 (noting that in some cases "habit evidence has been offered to show that the driver was blatantly incompetent or

7

reckless"). There was no evidence of Reyes's habits or prior experiences that would tend to show that he could not competently operate the forklift or would do so recklessly. To the contrary, the evidence was that Reyes had previously operated the forklift and other similar equipment at 4Front's warehouse without incident, and that when asked if he could operate it on this occasion, he replied, "I can move it, but slowly."

Nevertheless, Rosales points to evidence indicating that Reyes was not formally trained or certified as a forklift driver, and that 4Front could and would have discovered this had it only made further inquiries, as OSHA regulations and 4Front's own internal policies required it to do. We agree with Rosales that a claimant can prove that a defendant "should have known" a fact by relying on evidence that the defendant should reasonably have inquired about that fact but failed to do so. *See Williams*, 699 S.W.2d 570, 575 (concluding that a jury could reasonably infer that the defendant "should have known" that the driver did not have a commercial operator's license from evidence that defendant assigned the driver to a heavy truck yet never asked the driver if he had a valid commercial license); *Mundy*, 206 S.W.2d at 590 (noting that the fact that the defendant "by the exercise of due care could have ascertained that [the driver] did not have a license may be alleged and proved by the plaintiff for the purpose of showing that the defendant's agents were in fact negligent in permitting [the driver] to take and drive the automobile"). But to "sustain such a claim based on a failure to screen," Rosales had to prove that the inquiries that 4Front did not make would have "revealed the risk" that establishes liability for negligent entrustment. *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 240 (Tex. 2010). In other words, Rosales had to show that 4Front would have discovered facts through its inquiry that would have caused a reasonable employer to discover that Reyes was incompetent or reckless, not that he was not formally trained or certified.

8

Even if Reyes was not formally trained and certified, and even if 4Front knew that he was not, a lack of formal training and certification does not establish that the operator was incompetent or reckless. Even the lack of a required legal license does not establish incompetence or recklessness. *Williams*, 699 S.W.2d at 574 ("[W]hether a driver has a license does not determine whether a driver is *in fact* incompetent. Some incompetent drivers are licensed, and some competent drivers are unlicensed."); *id.* at 575 (holding that, despite evidence that truck driver lacked required commercial license, and that his employer did not check to see if he did, there was no evidence that driver "was in fact an incompetent or reckless driver," or that employer knew that he was). If Texas statutes required Reyes to be legally licensed to operate the forklift, then permitting him to operate it without a legal license would constitute negligence per se. *See Mundy*, 206 S.W.2d at 589–90. But in the absence of such a statutory requirement, Rosales was required to show that 4Front knew or should have known that Reyes was incompetent or reckless, not that he was uncertified or lacked formal training.

Although no one disputes that Reyes negligently drove the forklift off the sidewalk's edge and caused Rosales to fall, there is no evidence that he was incompetent or acting recklessly when he did so. It is not enough to show that 4Front knew or should have known that Reyes would have a momentary lapse in judgment or otherwise act negligently. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 851 (Tex. 2005) (characterizing "lapses in professional judgment" as negligence). Evidence of negligence does not establish recklessness. *City of Amarillo v. Martin*, 971 S.W.2d 426, 430 (Tex. 1998) (defining recklessness as "an act that the operator knew or should have known posed a high degree of risk of serious injury"); *Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 326 (Tex. 1993) ("The usual meaning assigned to 'willful,' 'wanton,' or

9

'reckless,' according to taste as to the word used, is that the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences.") (quoting W. PAGE KEETON ET AL., PROSSER AND KEETON ON TORTS § 34, at 213 (5th ed. 1984)). The record does not support a finding that Reyes was incompetent or reckless. To the contrary, the evidence establishes that he had safely operated the forklift at 4Front's facility before, including for three to four hours two days before at the same location on the sidewalk in front of the sign. Although evidence supports a finding that Reyes was negligent while driving the forklift, there is simply no evidence that he was incompetent or reckless, or that 4Front knew or should have known that he was.

### III.
### Premises liability

The jury in this case separately found 4Front liable under a premises-liability theory. Specifically, the jury found that 4Front negligently caused the accident because a "condition [of the premises] posed an unreasonable risk of harm," that 4Front had "actual knowledge of the danger," and that 4Front failed to adequately warn Rosales of the condition or make the condition reasonably safe. 4Front primarily challenges this finding by arguing that Chapter 95 applies and that there is no evidence that 4Front had actual knowledge of any dangerous condition. We conclude that, even if Chapter 95 does not apply, Rosales's premises-liability claim fails because there is no evidence of any "condition of the premises" of which 4Front was required to warn or that 4Front was required to make safe.

By asking about a "condition of the premises," this question presented a premises-liability theory that focuses on the "state of being" of the property itself. *Abutahoun*, 463 S.W.3d at 49

10

(defining a "condition" as "either an intentional or an inadvertent state of being"). Although tangible property like a forklift can cause a dangerous "condition of the premises," when (as here) the danger arises from the contemporaneous use of the tangible property, the claim is for negligent "use" of property, not for premises liability. *See Sampson v. Univ. of Tex. at Austin*, --- S.W.3d ---, --- (Tex. 2016) (distinguishing "whether the injury occurred by or as a contemporaneous result of the activity itself—a negligent activity—or rather by a condition created by the activity—a premises defect"). This question asks about the "condition of the premises," not about the operation or entrustment of the forklift.

No evidence in this record supports liability based on a "condition of the premises." The only premises conditions on which Rosales's claims could possibly be based are the conditions of the sign and of the sidewalk off which Reyes drove the forklift. There is no evidence, however, that any condition of the sign was dangerous or proximately caused this accident. And even if the sidewalk's edge was dangerous and did proximately cause the accident, "we have declined to impose a duty for premises conditions that are open and obvious, regardless of whether such conditions are artificial or naturally occurring." *Suarez v. City of Texas City*, 465 S.W.3d 623, 633 (Tex. 2015). Any danger the sidewalk presented was open and obvious, and thus cannot support Rosales's premises liability claim. Because no evidence establishes that any condition of 4Front's premises was dangerous, not open and obvious, and proximately caused the accident, we conclude that no evidence supports a finding of premises liability.

### IV.
### Conclusion

We find no evidence to support either of the theories on which the jury found 4Front liable, and we need not address 4Front's alternative arguments challenging the trial court's judgment. We

11

conclude that the judgment imposing liability against 4Front must be reversed. The judgment also imposes liability against Reyes, however, based on the jury's finding that Reyes and Rosales were negligent and bore fifteen and ten percent of the responsibility, respectively. Judicial efficiency might compel us to simply reapportion the jury's responsibility findings between Reyes and Rosales and place sixty percent (15/25s) on Reyes. *See, e.g.*, *Sanchez v. Brownsville Sports Ctr., Inc.*, 51 S.W.3d 643 (Tex. App.—Corpus Christi 2001, pet. dism'd by agr.) (reapportioning responsibility percentages on appeal); *Davis v. Commercial Union Ins. Co.*, 892 F.2d 378, 384–85 (5th Cir. 1990) (same, applying Louisiana law). But the possibility that the jury would have assigned different percentages to Reyes and Rosales had it found that 4Front bears no responsibility might compel a different result. *See JHC Ventures L.P. v. Fast Trucking, Inc.*, 94 S.W.3d 762, 773–74 (Tex. App.—San Antonio 2002, no pet.) (declining to reapportion responsibility percentages and remanding to trial court instead). Because the parties have not addressed this issue in their briefing to this Court, we remand the case to the trial court so that it may determine the proper disposition of Rosales's claims against Reyes.

_____
Jeffrey S. Boyd
Justice

Opinion delivered: December 23, 2016