In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-20-00115-CV
_____

LITISHA PESHOFF, Appellant

V.

KLEIN INVESTMENTS, INC., Appellee

On Appeal from the 172nd District Court
Jefferson County, Texas
Trial Cause No. E-201,156

## MEMORANDUM OPINION

Litisha Peshoff appeals the trial court's final summary judgment dismissing all of her claims against Klein Investments, Inc. In three issues on appeal, Peshoff argues that the trial court erred 1) when it refused to consider her late filed response to the motion for summary judgment; 2) when it granted summary judgment on issues not pleaded for; and 3) when it subsequently denied her motion for new trial. For the reasons set forth, we affirm.

## Background

In October 2016, Peshoff was driving a vehicle with her passenger Noel Jackowski, in Jefferson County. Stephen Hartman began following her in a black pickup truck. Hartman was a "bounty hunter" employed and licensed "with Klein" who provided investigation services. Klein had a contract with Al Reed Bail Bonds to apprehend its clients who, after being bonded out of jail, had failed to appear for court or otherwise violated the terms of their bond. Al Reed held a bail bond on Jackowski, the passenger.

According to Peshoff's pleadings, Hartman began to drive in an unsafe and threatening manner–speeding, pulling alongside Peshoff several times, and following at an unsafe distance. Peshoff and Jackowski could see Hartman leering at them as he attempted to close the distance between their cars. After several minutes of this terrifying behavior, Hartman pulled alongside Peshoff, rolled down his window, and ordered Peshoff to pull to the side of the road. Not knowing Hartman, Peshoff did not comply. Peshoff was fearful of Hartman's threatening and unsafe behavior. It is undisputed that Peshoff saw Hartman pull alongside her vehicle and point a gun at her vehicle. Peshoff then contacted "authorities." At an intersection, Hartman exited his vehicle and, once again, pointed the gun at Peshoff's vehicle and told Peshoff that he had a warrant for Jackowski's arrest and Peshoff pulled into a church parking lot. Hartman placed Jackowski in handcuffs and the

2

police arrived. At the scene, Hartman was arrested for deadly conduct and unlawfully carrying a weapon. Hartman was subsequently convicted of deadly conduct.

## Procedural History

In January 2018, Peshoff filed suit against Klein, Stephen L. Hartman, and Crime Pays, LLC dba Al Reed Bail Bonds.[1] Peshoff alleged Klein was liable for negligent hiring and supervision. Peshoff further alleged that Klein was vicariously liable for the intentional torts of "threat of bodily injury," "intentional infliction of emotional distress," "intrusion upon seclusion," "false imprisonment," and for negligence and negligence per se, all alleged to have been committed by Stephen L. Hartman while in the course and scope of his employment with Klein or with authority delegated to him by Klein. In addition to seeking "economic" damages for physical pain, mental anguish and medical care expenses, she sought exemplary damages. After the suit had been pending for a year and a half, on June 26, 2019, the court entered a Docket Control Order setting trial for January 13, 2020. The relevant deadlines were for: discovery (8/23/2019), to file dispositive motions (9/29/2019), and it required dispositive motions to be set and heard no later than thirty days prior trial (which was 12/13/2019). After the lawsuit had been pending for 21 months, on

---

[1] The trial court signed an order of nonsuit of Peshoff's claims against Stephen L. Hartman and Crimes Pays, LLC dba Al Reed Bail Bonds. They are not parties to this appeal.

September 27, 2019, Klein filed a Traditional and No Evidence Motion for Summary

Judgment. Attached to Klein's motion as summary judgment evidence was

- Peshoff's sworn deposition transcript,

- Peshoff's trial testimony from Hartman's criminal trial,

- Records of Peshoff's husband's criminal convictions for assault committed against her,

- Peshoff's answers to Klein's interrogatories, and

- Peshoff's medical records.

On December 5, 2019, Peshoff filed a Verified Motion for Continuance of Hearing

on Klein's Motion for Summary Judgment set for hearing on December 12, 2019.

The trial court held a hearing regarding Klein's Motion for Summary Judgment and

Peshoff's Motion for Continuance. Klein's attorney objected to the continuance with

regard to any evidence of Ms. Peshoff's mental anguish claims because her

deposition had been taken three months prior to the hearing date:

> [DEFENSE COUNSEL FOR KLEIN]: The first part of our motion includes Ms. Peshoff's claim for mental anguish. The transcripts he is waiting on are of the defendants, not Ms. Peshoff. She's been done. He has had three months' notice for whatever evidence he wants to present on that. I don't think there is any basis to get leave to supplement the lack of a record on Ms. Peshoff.

4

Over Klein's objection, the trial court orally granted Peshoff's motion and granted her leave to file a late response. The following exchange occurred at the conclusion of the hearing:

THE COURT: Okay. So, I am obviously going to take this under advisement at this time. [Plaintiff's Attorney], I am looking at my calendar here. I'm going to give you leave to file a written response; and I'm going to rule on this matter via submission on December the 30th, which is the Monday after Christmas. Okay? Can you hear me, sir?

[NO RESPONSE]

…

THE COURT: Can you hear me, [Plaintiff's Attorney]?

[PLAINTIFF'S ATTORNEY]: I can.

THE COURT: I'm taking the motion under advisement. I'm going to rule – I'm going to rule on the motion via submission on the 30th, which is the Monday following Christmas. I'm giving you leave to file a written response before that date. Okay?

[PLAINTIFF'S ATTORNEY]: Anytime before the 30th?

THE COURT: I am ruling on the 30th. I'm letting you know. I know you have health problems. I read your pleadings. Hopefully that will give you time to get your written submission.

[PLAINTIFF'S ATTORNEY]: I appreciate the consideration, your Honor.

Peshoff filed her Response to Klein's Motion for Partial Traditional and No-Evidence Summary Judgment by e-file on December 30, 2019, at 9:22 p.m. On December 30, 2019, the trial court granted Klein's Traditional and No Evidence

Motion for Summary Judgment, and in the written order, included a memorialization of his oral order on plaintiff's Motion for Continuance filed in connection with the earlier hearing on Klein's summary judgment motion. In its order, the trial court stated the following,

> The Court finds that Plaintiff's Motion for Continuance as to the hearing on Klein Investment, Inc.'s Traditional and No Evidence Motion for Summary Judgment should be granted to allow Plaintiff to file a response to the motion on or before Sunday, December 29, 2019. The Court finds that Klein Investments, Inc.'s Traditional and No Evidence Motion for Summary Judgment will be reset and decided by submission on Monday, December 30, 2019, and the Court will consider any response filed by Plaintiff, prior to this date. Defendant's objections to restricting the evidence to the depositions taken in this matter and which were the basis of Plaintiff'[s] Verified Motion for Continuance and restricting Plaintiff's ability to submit evidence submitted by Litisha Peshoff is noted and OVERRULED.
>
> The Court further finds that the reset of Klein Investments, Inc.'s Traditional and No Evidence Motion for Summary Judgment does not require re-notice of the hearing date set forth in Rule 166a of the Texas Rules of Civil Procedure, and the Court finds proper notice of this hearing was provided by the movant to Plaintiff.
>
> Following review of the pleadings and evidence on file, filed prior to Monday, December 30, 2019, the Court, by submission, finds that Klein Investments, Inc.'s Traditional and No Evidence Motion for Summary Judgment filed in this matter on September 27, 2019 should be GRANTED;
>
> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Defendant Klein Investments, Inc.'s Traditional and No Evidence Motion for Summary Judgment is hereby GRANTED, and all of Litisha Peshoff's claims asserted in this matter against Klein Investments, Inc. are DISMISSED WITH PREJUDICE to the right of Litisha Peshoff to refile same in the future.

6

Peshoff filed a Verified Motion for New Trial arguing that, although her trial counsel stated on the record that her reply to Klein's motion for summary judgment was due "before [December 30th[,]", Peshoff's counsel in good faith believed that he had asked the Court for leave to file Peshoff's response to Klein's motion for summary judgment any time on December 30, 2019 not before December 30th. Peshoff's counsel believed this relief had been granted. The trial court denied Peshoff's Motion for New Trial. Peshoff timely filed her appeal.

**Issue Two: The Final Summary Judgment is overly broad**

We first consider the second issue raised by Peshoff that the order granting summary judgment was overbroad. Even if we consider the late-filed response to the motion for summary judgment, filed at 9:22 p.m. on December 30, 2019, the evidence would not be materially different from that produced by Klein in its motion for summary judgment. In her second issue, Peshoff argues that the trial court abused its discretion by granting Klein summary judgment on an issue that he did not present in his motion. Peshoff argues that the trial court erred by granting summary judgment on all of "Litisha Peshoff's claims[,]" because Klein did not challenge her claims for threat of bodily injury, intrusion upon seclusion, false imprisonment, and negligence per se. It should be noted that Klein's no evidence motion for summary judgment specifically alleged that there was no evidence of: compensable mental anguish damages as to the intentional torts pleaded; negligent hiring or supervision as to the

negligence and negligence per se claims; the intentional acts of Hartman being within the course and scope of his employment as a matter of law; and showing Peshoff was entitled to exemplary damages under these circumstances. Thus, Klein attacked at least one element of each of Peshoff's claims that were necessary for Peshoff to prevail at trial. We believe that the issues were adequately raised in the motion for summary judgment.

We review a trial court's decision to grant summary judgment de novo. *See Shell Oil Co. v. Writt*, 464 S.W.3d 650, 654 (Tex. 2015). We view the evidence in the light most favorable to the nonmovant. *Id.* In doing so, we indulge every reasonable inference and resolve any doubts against the motion. *See City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005). "Undisputed evidence may be conclusive of the absence of a material fact issue, but only if reasonable people could not differ in their conclusions as to that evidence." *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012) (citation omitted).

After adequate time for discovery, a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim on which the adverse party has the burden of proof. Tex. R. Civ. P. 166a(i). The motion must specify which elements have no evidence. *See id*. "The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact." *Id.*

When a no-evidence motion has been filed, it "is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003) (citations omitted). A no evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *See Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

A party moving for traditional summary judgment has the burden of establishing there is no genuine issue of material fact as to at least one requisite element of the asserted cause of action and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). When the trial court fails to specify the grounds on which it granted summary judgment, we must affirm if any of the summary judgment grounds are meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872-73 (Tex. 2000). If a defendant files a combined traditional and no-evidence summary judgment motion, we first review the judgment under the no-evidence standards of Rule 166a(i). *See Ford Motor Co. v. Ridgway*, 135 S.W.3d

598, 600-01 (Tex. 2004); *Werth v. Johnson*, 294 S.W.3d 908, 909 (Tex. App.—

Beaumont 2009, no pet.). Accordingly, we limit our discussion of the summary

judgment grounds to those necessary for the resolution of this appeal. *See FM*

*Props.*, 22 S.W.3d at 872-73; Tex. R. App. P. 47.1.

In her petition, Peshoff alleged the following causes of action against Klein:

## [] Threat of Bodily Injury [within the course and scope of employment]

27. Hartman threatened Peshoff with imminent bodily injury by pointing a gun at her and threatening to shoot if she did not follow his orders. Hartman caused Peshoff to fear imminent, severe bodily injury or death. Peshoff's terror was a foreseeable result of Hartman's unlawful actions.

28. Hartman's threat injured Peshoff by causing her physical pain, mental anguish, and medical care expenses. Because of the malicious manner that Hartman committed his unlawful act, Peshoff will suffer from future mental anguish, pain and suffering, and medical expenses.

29. Hartman's acts were performed as an employee of Klein and were within the scope of that employment or within the authority delegated to the employee. Hartman was able to act on behalf of Al Reed only because of the professional investigator license obtained through his employment with Klein.

## [] Intentional Infliction of Emotional Distress

30. Hartman's extreme and outrageous conduct intentionally inflicted emotional distress on Peshoff. Hartman pointed a gun at her from a moving car, while stopped at an intersection, and while stopped in a public parking lot. Hartman threatened to shoot Peshoff if she did not comply with his orders.

31. Hartman's conduct proximately caused Peshoff's severe emotional distress because her damages are foreseeable results of Hartman's

malicious actions. Hartman has admitted he intended to inflict distress upon Peshoff so she would comply with his orders. Peshoff's emotional distress cannot be remedied by any other cause of action because the unique nature of Hartman's criminal acts.

32. Hartman's actions have caused Peshoff to suffer from extreme worry, depression, stress, and anxiety.

33. Hartman's acts were performed while in Klein's employment and were within the scope of that employment, or within the authority delegated to him. Hartman was able to act on behalf of Al Reed only because of the license obtained through his employment with Klein.

## [] Intrusion Upon Seclusion [within the course and scope of employment]

34. Hartman intruded on Peshoff's seclusion when he intentionally, intruded on the private space of her private vehicle, and forced her off the road and out of her vehicle. Brandishing a gun in a threating manner from a moving vehicle with the intent of removing her from that seclusion was highly offensive.

35. Hartman's acts were performed while in the employment of Klein and were within the scope of that employment or within the authority delegated to the employee. Hartman was able to act on behalf of defendant Al Reed only because of the professional investigator license obtained through his employment with Klein.

## [] False Imprisonment [within the course and scope of employment]

36. Hartman willfully detained Peshoff by threat when he intentionally pointed a gun at her from a moving car for the purpose of detaining her, which was sufficient to overcome Peshoff's free will.

37. Peshoff did not consent to the detention.

38. Hartman did not have legal authority or justification to detain Peshoff.

11

39. Hartman's unlawful detention of Peshoff caused injury to her, which includes actual damages for physical pain, mental anguish, and medical care expenses. Because of the malicious manner that Hartman committed his unlawful act, Peshoff will suffer from future mental anguish, pain and suffering, and medical expenses.

40. Hartman's acts were performed while in the employment of Klein and were within the scope of that employment or within the authority delegated to the employee. Hartman was able to act on behalf of Al Reed only because of the professional investigator license obtained through his employment with Klein.

[] **Negligent Hiring and Supervision (Klein) [and Negligence Per Se]**

51. Klein had a legal duty to hire and supervise competent employees.

52. Klein breached this duty when it negligently hired, supervised, trained, and retained Hartman. Specifically, Klein breached its duty when it supported and allowed defendant Hartman to perform and continue to perform his duties, which required a professional license through Klein, in an unlawful and criminal manner.

53. Klein's breach of its duty to hire and supervise competent employees proximately caused injury to Peshoff, which resulted in the damages for physical pain, mental anguish, and medical care expenses.

**Vicarious liability for negligence and negligence per se**

The motion for summary judgment argued Klein owed no duty to Peshoff, that he did not breach a duty by negligently hiring/supervising Hartman, and that any negligence was not the proximate cause of the injuries to Peshoff. A negligence claim requires proof of a legal duty from defendant to plaintiff, a breach of that duty, and damages proximately caused by that breach. *See Clark v. PFPP Ltd. P'ship*, 455 S.W.3d 283, 287 (Tex. App.—Dallas 2015, no pet.). In determining whether a duty

exists in the circumstances before us, we must determine, as a matter of law, whether Klein owed a duty to Peshoff in this instance. The Texas Supreme Court has not "ruled definitively on the existence, elements, and scope" of negligent hiring and supervision claims. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 n.27 (Tex. 2010). But, in 2019, the Texas Supreme Court stated the following regarding negligent hiring cases:

> Although we have not ruled definitively on the existence, elements, and scope of a negligent-hiring claim, *Waffle House, Inc. v. Williams*, 313 S.W.3d 793, 804 n.27 (Tex. 2010), we have recognized that it is 'factually similar' to a claim for negligent entrustment, *Wansey v. Hole*, 379 S.W.3d 246, 248 (Tex. 2012) (per curiam). And we have explained that a negligent-entrustment claim requires separate negligent acts by two parties: the owner's negligence in entrusting property to another, and the entrustee's negligence in using that property. *4Front Engineered Sols., Inc. v. Rosales*, 505 S.W.3d 905, 909 (Tex. 2016). The plaintiff must prove not only that the entrustee's negligence proximately caused the harm, but also that the 'risk that caused the entrustment or hiring to be negligent also proximately caused the plaintiff's injuries,' *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 240 (Tex. 2010). In the same way, a negligent-hiring claim requires negligence by two separate parties: the employer's negligence in hiring the employee and the employee's subsequent negligent act or omission. Both negligent acts must proximately cause the injury. *Wansey*, 379 S.W.3d at 247; Hughes, 306 S.W.3d at 240-41*; Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 796 (Tex. 2006).

*Endeavor Energy Res., L.P. v. Cuevas*, 593 S.W.3d 307, 311 (Tex. 2019).

The availability of a negligent-hiring claim, the risk that caused the hiring or supervision to be negligent, must also have proximately caused injury to the plaintiff. *See Hughes*, 306 S.W.3d at 240 (concluding that the negligent hiring should have a

similar requirement to negligent entrustment cases which requires that the employee's negligent conduct harm the plaintiff).  Even though the Texas Supreme Court has "never expressly set out what duty an employer has in hiring employees, or said that a negligent hiring claim requires more than just negligent hiring practices, there is a broad consensus among Texas courts that such a claim requires that the plaintiff suffer some damages from the foreseeable misconduct of an employee hired pursuant to the defendant's negligent practices." *Wansey*, 379 S.W.3d at 247 (citations omitted).

In this case, Peshoff produced no evidence establishing damages due to harm caused by Hartman as an employee of Klein. *Id*. Documents produced by Klein in his motion for summary judgment demonstrate that Peshoff suffered no physical damages from her encounter with Hartman. In her deposition, Peshoff testified that Hartman never physically injured her or damaged her vehicle on the day in question. She swore she suffers from emotional damages including "anxiety…depression… insomnia[,]" as a result of the encounter with Hartman. And at Hartman's criminal trial, Peshoff testified that she suffered from "nightmares of the whole thing. I've been put on medicine because I couldn't sleep, keeping my family up. I've literally almost attacked my son because he would try to wake me up to get him up for school. I go to counseling." Documents attached to Klein's summary judgment demonstrated Peshoff reported to a physician that in October 2016, the same month

14

as the incident, she had suffered from "hormones…symptoms began 9 months ago[,]" describing the symptoms as "being moderate to severe…occur daily[,] [h]orrible mood swings, lack of energy, stress." Peshoff also reported the symptoms started after the birth of her last child, a child born before the incident with Hartman. She told her physician that she had a history of anxiety, depressed mood, difficulty falling asleep, excessive worry, restlessness, anger, and "[t]he symptoms" are from the last "2 years." Peshoff also admitted that she has never taken time off work after the October incident, other than court dates. Peshoff confirmed that before the October incident, she was in a physically and emotionally abusive relationship in which her ex-husband was later convicted of assault. But she maintained that this relationship did not cause her emotional distress or anxiety. She testified that, other than the death of her mother, nothing in her life has caused mental anguish except the incident with Hartman. Evidence provided in the late filing by Peshoff was no different. Even so, Peshoff provided the court with no expert testimony to establish a causal link between the incident with Hartman and any symptoms Peshoff reported to her health care providers. *See Guevara v. Ferrer*, 247 S.W.3d 662, 663 (Tex. 2007).

To defeat Klein's motion for summary judgment on each of her claims, Peshoff was required to submit summary-judgment proof that she suffered damages caused by Klein's employee's conduct. *See Wansey*, 379 S.W.3d at 247; *Moore*

15

*Freight Servs., Inc. v. Munoz*, 545 S.W.3d 85, 98 (Tex. App.—El Paso 2017, pet. denied) ("The duty of the employer extends only to prevent the employee or independent contractor from causing physical harm to a third party. The Plaintiffs had to show that [the defendant's] actions in hiring, supervising, or retaining [their employee] were the cause-in-fact of [the plaintiff's] injuries and that their injuries were a foreseeable consequence of [the defendant's] hiring, supervision, or retention of [their employee].").

The summary-judgment evidence established that Mr. Hartman committed illegal acts against Peshoff. But even though Hartman was convicted of those acts in his criminal trial, none of the summary-judgment evidence in this record established that Peshoff's mental and emotional distress was, in fact, caused by Hartman's actions. And even if Hartman's actions were a cause in fact of Peshoff's mental and emotional distress, Peshoff failed to meet her burden to present summary-judgment evidence as to Klein's alleged negligence in hiring or in supervising Hartman. For example, Peshoff provided the court with no summary-judgment evidence from an expert, or otherwise, of any training standards that apply to employees of investigation firms that do "bounty hunting" for bail bond companies. She did not show how any such standards would have kept Hartman from threatening Peshoff with a gun. Peshoff also presented no summary-judgment evidence to show Hartman

16

was not properly trained or supervised. The fact that Klein employed Hartman does not automatically make Klein legally liable for Hartman's criminal acts.

Because there is no evidence that Klein's negligence in hiring and supervising Hartman caused Peshoff's damages, we will affirm the trial court's summary judgment on the claim of negligent hiring and supervision and negligence per se. *See* Tex. R. Civ. P. 166a(c), (i).

### Course and scope of employment liability

In *Wheeler v. Free*, 638 S.W.3d 731 (Tex. App.—Eastland 2021, pet. denied), our sister Eastland court distinguished the analysis necessary to determine "course and scope" liability, discussed below, from "negligent hiring and supervision liability" discussed above. In *Wheeler*, the Eastland Court explained:

> Negligent hiring, retention, and supervision claims are all simple negligence causes of action based on an employer's direct negligence rather than on vicarious liability. Thus a claim for negligent hiring, supervision, or retention is not dependent upon a finding that the employee was acting in the course and scope of his employment when the tortious act occurred. However, the plaintiff's injury must be the result of job-related conduct Were such a connection not required, an employer would essentially be an insurer of the safety of every person who happens to come into contact with his employee simply because of his status as an employee. This nexus requirement is an element of foreseeability, and foreseeability is an essential component of both proximate cause and duty. *Fernea v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 559 S.W.3d 537, 548 (Tex. App.—Austin 2011), *judgm't withdrawn, appeal dism'd*, 2014 Tex. App. LEXIS 12063, [] (Tex. App.—Austin Nov. 5, 2014, no pet.) (mem. op.); *see Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 659 (Tex. 1999)."

*Id.* at 738-39 (cleaned up).

17

Peshoff also claimed that Klein was liable for Hartman's intentional torts because Hartman was acting in the course and scope of his employment in committing the intentional torts. Although the Texas Supreme Court has not ruled on the duties an employer of "bounty hunters" for bail bond companies owes to innocent bystanders, or the general public, it has set forth factors to consider when evaluating the existence of the duties of an employer to customers, or innocent bystanders, when an employee, or someone at the direction of an employer, commits an intentional tort against the customer or bystander. In *Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 507-08 (Tex. 2017) an Exxon Mobil employee started a fight with a customer, Pagayon. The employee and Pagayon had words on the phone three days earlier about the employee harassing Pagayon's son who worked at the store with the employee. The day of the altercation, while the employee was on duty, Pagayon entered the store, was accosted by the employee, and a fight ensued. Pagayon was injured by the employee, hospitalized, and after faulty medical procedures, died). The factors the court considered in evaluating whether a duty exists are (1) the risk of an occurrence such as this one; (2) whether the foreseeability of injury is small and the likelihood of injury is remote; (3) the significance of the burden on the employer; (4) the consequences of extending the burden in a case such as this; and (5) the social utility in placing such a burden on an employer in this circumstance. *Id*. at 507-08.

Applying the factors from *Pagayon* to our case, the risk of the occurrence (an investigator for a bail bond company, Hartman, points a gun at the vehicle of an innocent bystander, Peshoff, who is carrying an alleged absconder, Jackowski, in her vehicle) was small. There is no evidence showing Klein was on notice that Hartman had a prior history of engaging in a similar act. Rather, the issue is whether an employer should be required to respond, in advance, to any possible action of an agent/employee who is seeking to enforce the contractual provisions of a bail bond when dealing with innocent bystanders or the general public. We conclude the answer is no. Customers who hire bail bond companies have already been arrested, accused of a crime, and placed under court-ordered conditions to comply with the bond. When the customer violates the court's order and an arrest warrant issues, the bail bond company seeks to find them and bring them to law enforcement to execute the arrest warrant. These companies frequently hire investigators ("bounty hunters") to locate the customer. While it is common knowledge that these investigators, or their employees or agents, may follow a customer (who has violated the bond and now has an outstanding arrest warrant), may run after the customer, may grab or tackle the customer to hold them until contact with law enforcement, such a foreseeable situation is far removed from foreseeing that an employee or agent for the investigation service will pursue and point a gun at an innocent bystander who may have no knowledge of the circumstances. Whatever duty an investigation

19

service may have to the general public in this circumstance, it cannot extend to its employees pointing guns at innocent bystanders in the absence of a showing that the employer knew the employee had previously engaged in similar acts.

We next consider whether the foreseeability of injury is small, and the likelihood of injury is remote. Any duty an employer has to control its employees should not make it an absolute insurer of their safety and the safety of patrons. *Id*. The second factor weighs against a finding of foreseeability because the burden of ensuring that an employee/agent of the investigation company will never engage in an intentional tort is significant. Given the independent nature of the "bounty hunter" contract employee, who is independently licensed, trained and certified by the state, it would place a significant burden on the employer if the employer were not able to rely on the training, licensing and certification by the state. The foreseeability that an independently licensed, trained, state-certified employee or contractor would pull a gun on an innocent bystander, in violation of a penal statute, is remote and such an expectation should not be placed on the potential employer to create liability for such an unforeseeable act. While we assume the actions of Hartman were extreme, and out of the ordinary, to extend liability to an employer in such a situation would render the employer liable for the most extreme consequences of its employee/agent's actions no matter how unforeseeable.

Finally, we are to consider whether the social utility in placing a foreseeability burden such as this on investigation firms who employ "bounty hunters" as employees or contractors, is great or small. While Klein might have been able, somehow, to prevent Hartman from committing this crime, the burden and expense of requiring immediate supervision of each contractor or employee seeking to enforce bail bond contracts would be physically and financially untenable given that the likelihood of an employee/agent committing a crime with a gun is so remote. Any social utility derived from requiring an employer to be as vigilant as Klein would have to have been to prevent his employee or agent from committing a crime with a gun is minimal and would be shifting the personal responsibility of the employee to obey the law from the individual to the employer.

Applying the factors that determine the existence of a duty in this case, we conclude that an investigation company who services bail bond companies with "bounty hunters", in the situation presented like the one presented here, owes no duty to supervise its employees to protect the general public from its employees unforeseen intentional acts. Appellant has not cited any controlling authority stating otherwise. Because Peshoff produced no evidence to establish Hartman's criminal conduct was foreseeable, Klein was not liable to Peshoff for Hartman's intentional acts as a matter of law. *See Pagayon,* 536 S.W.3d at 507-08. Absent a duty to prevent these unforeseeable intentional torts, Klein cannot be held liable for them.

The trial court did not abuse its discretion in granting the motion for summary judgment.

**Exemplary damages**

Finally, in her petition, Peshoff also alleges exemplary damages against Klein. "Generally, exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm at issue results from (1) fraud; (2) malice; or (3) gross negligence." *Seber v. Union Pacific R.R. Co.*, 350 S.W.3d 640, 654 (Tex. App.—Houston [14th Dist.] 2011, pet. dism'd) (citing Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a)). As we have held that Peshoff failed to provide sufficient evidence of negligent hiring and supervision, she is not entitled to exemplary damages. *See Nowzaradan v. Ryans*, 347 S.W.3d 734, 739 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("negligence and gross negligence are not separate causes of action[]"); *see also Said v. Sugar Creek Country Club, Inc.*, No. 14-17-00079-CV, 2018 WL 4177859, at *6 (Tex. App—Houston [14th Dist.] Aug. 31, 2018, pet. denied) (mem. op.) ("[A] summary-judgment ground that would support dismissal of [the plaintiff's] negligence claim is sufficiently broad to support the dismissal of the part of her negligence claim in which she seeks to recover exemplary damages based on an allegation of gross negligence."). We overrule Peshoff's second issue.

## Conclusion

Because we find no abuse of discretion in the granting of the summary judgment, even considering the untimely response, it is unnecessary for us to address the first and third issues raised by Peshoff concerning the timeliness and consideration of her late response to the motion for summary judgment. Having overruled Peshoff's second issue on appeal, we affirm the trial court's judgment.

AFFIRMED.

_____
JAY WRIGHT
Justice

Submitted on December 21, 2021
Opinion Delivered February 23, 2023

Before Golemon, C.J., Horton and Wright, JJ.

23