Opinion filed September 12, 2024



In The

# Eleventh Court of Appeals

_____

## Nos. 11-23-00002-CR & 11-23-00003-CR

_____

## STEVE ORLANDO VAN HORNE, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the County Court at Law No. 2**
**Taylor County, Texas**
**Trial Court Cause Nos. 2-199-22 & 2-200-22**

## M E M O R A N D U M   O P I N I O N

This case involves the convictions of Appellant, Steven Van Horne, who appeared pro se in the trial court and does so on appeal, for driving without a driver's license and failing to identify himself to a peace officer. *See* TEX. PENAL CODE ANN. § 38.02 (West Supp. 2023); TEX. TRANSP. CODE ANN. § 521.021 (West Supp. 2023). On appeal, Appellant forwards multifarious arguments founded on a claim of First Amendment freedom of religion. Appellant's argument is somewhat similar to sovereign citizen cases, arguing that the State has no jurisdiction over the accused

and that laws of the State do not or should not apply to him.[1]  *See, e.g.*, *Borne v. State*, 593 S.W.3d at 410 (holding that jurisdiction was proper when pro se defendant argued that he was a "sovereign . . . man" ); *State v. Arnold*, 379 N.W.2d 322, 323 (S.D. 1986) (where defendant claimed that state identification laws violated his freedom of religion).

We agree that the First Amendment encompasses rights that are paramount to the liberty of citizens of the United States.[2]  *See* U.S. CONST. amend. I.  But as we discuss herein, it does not generally preempt state transportation regulations and does not make exceptions for individuals failing to reasonably identify themselves to law enforcement officers under "freedom of religion" theories or driving on the public roads under a theory of a "constitutionally protected personal right of locomotion."  We affirm the judgments of the trial court.

*Factual and Procedural History*

On March 16, 2021, Department of Public Safety Trooper Daniel White pulled over a pickup traveling on FM 18 in Taylor County with a defective brake light.  Trooper White identified Appellant in court as the driver of the pickup. Trooper White testified that when Appellant did not understand why he was pulled over, he asked Appellant to exit the pickup so that he could show Appellant the defective brake light.  Appellant complied by getting out of the pickup.  After he complied, Trooper White asked Appellant for his driver's license.  Appellant informed Trooper White that he did not have one and returned to the pickup, despite

---

[1]But, as in *Boerne*, Appellant denies that he is making a "sovereign citizen" argument.  *See Borne v. State*, 593 S.W.3d 404, 410, 412 (Tex. App.—Beaumont 2020, no pet.).

[2]As Thomas Jefferson said, "[T]he constitutional freedom of religion [is] the most inalienable and sacred of all human rights."  MINUTES OF THE BOARD OF VISITORS OF THE UNIVERSITY OF VIRGINIA, 7 October 1822, *Founders Online*, National Archives, https://founders.archives.gov/documents/Madison/04-02-02-0504.  Indeed, "[c]ourts give great deference to the First Amendment's freedom of religion *guarantee*." *Jennison v. Prasifka*, 391 S.W.3d 660, 664 (Tex. App.—Dallas 2013, no pet.) (emphasis added) (citing *In re Godwin*, 293 S.W.3d 742, 745 (Tex. App.—San Antonio 2009, orig. proceeding)); *see generally Westbrook v. Penley*, 231 S.W.3d 389, 395 (Tex. 2007).

instructions to remain outside. Trooper White testified that Appellant refused to get back out of the pickup but "cracked" the driver's side window "a couple of inches" and attempted to hand him a stack of papers. The papers were identified as documents from Appellant's religious organization, which contained a misspelled version of Appellant's name.

Because Appellant refused to provide identification and lacked any valid, governmentally recognized ID or driver's license, Trooper White notified Appellant that he was being arrested for failure to identify and for driving without a license. Appellant refused to exit the pickup and Trooper White called Trooper Trey Valencia for backup. With their vehicles, the troopers subsequently blocked off Appellant's pickup so he could not drive away. Trooper White ran the license plate and discovered that the pickup was registered to a daycare. Trooper White contacted the daycare, and they provided him with Appellant's name and date of birth, which allowed Trooper White to identify Appellant. After asking Appellant to exit the pickup for almost twenty-five minutes, Appellant finally complied with Trooper White's requests and was arrested.

A jury trial was conducted before the Justice of the Peace for Precinct 1 in Taylor County, and the jury found him guilty of both offenses. Appellant appealed his convictions to the Taylor County Court of Law No. 2 for de novo review, and a jury trial was conducted. The charges were consolidated for trial. Appellant represented himself pro se and pleaded not guilty to the charges. Appellant exercised his right to a jury trial, and he was found guilty of both offenses. At the punishment phase, the trial court assessed a $200 fine for the driving-without-a-license offense and a $500 fine for the failure-to-identify offense.

*Coherent and Discernible Appellate Issues*

Appellant filed a brief in this cause that sets forth several issues. The State responded by filing a letter brief that stated that it "can find no coherent or

3

discernible argument [by Appellant] to which to respond." An appellate brief must state all issues presented for review clearly and concisely and include appropriate citations to authorities and to the record. *See* TEX. R. APP. P. 38.1(f), (i).

Appellant's brief raises sub-issues within each main issue. When an appellant raises multiple issues in a single point of error, the point of error is multifarious, and an appellate court may decline to address those matters. *See Mays v. State*, 318 S.W.3d 368, 390 n.82 (Tex. Crim. App. 2010) (citing *Wood v. State*, 18 S.W.3d 642, 649 n.6 (Tex. Crim. App. 2000)). However, we may address the issue in the interest of justice if we can determine, with reasonable certainty, the alleged error about which a complaint is made. *See Davidson v. State*, 249 S.W.3d 709, 717 n.2 (Tex. App.—Austin 2008, pet. ref'd); *Marcum v. State*, 983 S.W.2d 762, 767 n.1 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd); *Barnes v. State*, 634 S.W.2d 25, 26 (Tex. App.—Beaumont 1982, no pet.). After diligently considering and liberally construing his pro se briefing, we will address each of his coherent and discernable appellate complaints.[3] To the extent Appellant has attempted to raise issues in his brief other than those addressed in this opinion, we hold that those issues have been waived as inadequately briefed and we overrule them. *See* TEX. R. APP. P. 38.1(i); *see also Tong v. State*, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000), *cert. denied*, 523 U.S. 1053 (2001); *Heiselbetz v. State*, 906 S.W.2d 500, 512 (Tex. Crim. App. 1995) ("From appellant's brief, we cannot discern his specific arguments, and we will not brief appellant's case for him.").

---

[3]For example, Appellant makes theological and extraneous arguments that include assertions that Pepsi uses fetal body parts in its products and that the United States government worships a demon, which make some of his arguments difficult to discern. He supports his arguments with cases from multiple jurisdictions and uses civil cases as authority to address his criminal convictions, all of which are irrelevant and fail to directly address the core issues before us.

4

*Analysis*

Appellant does not assert that the evidence is insufficient to sustain his convictions. Rather, Appellant's discernible issues are couched under the color of "religious freedom" and relate to: (1) the jurisdiction of the trial court, (2) alleged lack of due process, (3) the constitutionality of state licensing requirements, and (4) whether the State falsely arrested him. We address those issues in turn, beginning with jurisdiction. Because there was a trial de novo before the County Court at Law from which the judgments at issue have been appealed, Appellant's arguments and complaints of alleged acts and omissions while the matter was before the Justice of the Peace are moot and will not be addressed. *See Praise Deliverance Church v. Jelinis, LLC*, 536 S.W.3d 849, 854 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (The perfection of an appeal from a justice court to a county court at law for trial de novo vacates and annuls the judgment of the justice court; the de novo trial is a "new trial in which the entire case is presented as if there had been no previous trial." (quoting Rule 510.10(c) of the Texas Rules of Civil Procedure)).

## I. *Jurisdiction*

Appellant argues in his first issue that he is an "Emissary of יהוה"" and that he does not "consent" to the trial court's jurisdiction over him. Appellant believes he should be exempt from the laws of the State of Texas because his "conscience" does not allow him to accept privileges from the State. While Appellant is free to deny privileges from the State, he is not free from the constraints and expectations, such as the necessity for a license, that the law places on every individual who drives on public Texas roads. *See, e.g.*, TRANSP. § 521.021. Appellant contends that the State has no jurisdiction as to both charges—driving without a license and failure to identify. He intermingles his jurisdictional argument with his claimed rights under the First Amendment. We address both aspects of his argument here.

5

With regard to the charge of driving without a license, the Transportation Code states that *every* person who operates a motor vehicle in Texas must be properly licensed unless they meet a valid exemption. *Id.*; *Hicks v. State*, 18 S.W.3d 743, 744 (Tex. App.—San Antonio 2000, no pet.) (interpreting Section 521.021 and noting that it "is well established [that] the State of Texas can and does require a valid driver's license for all persons operating motor vehicles on the roads of the State"). The statute prohibiting driving without a license contains no exceptions. *Hicks*, 18 S.W.3d at 744. Additionally, Texas law is clear that the person operating a motor vehicle must display the license on demand of a magistrate, court officer, or peace officer. TRANSP. § 521.025(a)(2). In this regard, "[a] peace officer may stop and detain a person operating a motor vehicle to determine if the person has a driver's license." *Id.* § 521.025(b). Appellant complains that he was arrested without a "complaint" or "citation" having been properly served on him. The information contained on the citation issued by Trooper White contained the notice information required by law.[4] *See* TRANSP. § 543.003 (West 2022). Moreover, apart from exemptions not applicable here,[5] a peace officer may "arrest without a warrant a person found committing a traffic violation." *Marzett v. McCraw*, 511 S.W.3d 210, 213 (Tex. App.—Dallas 2015, pet. denied) (citing TRANSP. §§ 543.001, .004(a)(1)).

A person commits the offense of failure to identify if he "intentionally refuses to give his name, residence address, or date of birth to a peace officer who has lawfully arrested the person and requested the information." PENAL § 38.02(a).

---

[4]Appellant does not claim that the information thereon was misleading or failed to meet the requirements of Section 543.003.

[5]The exemptions Section 521.021 are referring to are found in Section 521.027, which include military personnel operating an official motor vehicle; certain persons operating a road machine, farm tractor, or implement of husbandry on a highway unless it is a commercial vehicle; and nonresidents on active duty who hold a license from another state (or their children). *See* TRANSP. § 521.027 (West 2018).

Essentially, Appellant claims that he is not subject to the trial court's jurisdiction because he is "not a fictitious member of any political society" and states that he does not consent to the trial court's jurisdiction over him. This is not the first time a Texas resident has claimed to be exempt from the law. *See, e.g.*, *Borne*, 593 S.W.3d at 412–13 (stating that the defendant's "alleged sovereign-citizen status does not mean he should be allowed to violate state laws without consequence, nor does it exempt [the defendant] from the jurisdiction of Texas courts"); *see also United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011) ("Regardless of an individual's claimed status of descent, be it as a 'sovereign citizen,' a 'secured-party creditor,' or a 'flesh-and-blood human being,' that person is not beyond the jurisdiction of the courts. These theories should be rejected summarily, however they are presented."); *Waggoner v. State*, No. 01-20-00074-CR, 2021 WL 5828936, at *3 (Tex. App.—Houston [1st Dist.] Dec. 9, 2021, pet. ref'd) (mem. op., not designated for publication) (holding same). And it is not the first time that Appellant has been party to a claim of exemption from state law based on religious beliefs, religious conscience, and a claim of lack of consent to the jurisdiction of governmental entities. *See Children of the Kingdom v. Cent. Appraisal Dist. of Taylor Cnty.*, 674 S.W.3d 407, 414 (Tex. App.—Eastland 2023, pet. denied), *petition for cert. filed*, No. 23-7611 (U.S. Jan. 25,2024). Regardless of his religious affiliation, status as an emissary, or alleged lack of "consent," generally, Texas trial courts have jurisdiction over offenses that occur within the counties that are within their territorial jurisdiction. *See Coyle v. State*, 775 S.W.2d 843 (Tex. App. —Dallas 1989, no writ) (holding that a trial court in the county where the violation took place had original jurisdiction). Appellant committed the offenses within the boundaries of Taylor County and was tried by a duly empaneled jury in the Taylor County Court at Law No. 2 after an appeal of his convictions from the justice court within the same county; thus, those courts had jurisdiction over his cases and were the appropriate

courts for the proceedings. *See* TEX. GOV'T CODE ANN. § 25.0003(a), 27.031(a) (West Supp. 2023); TEX. CODE CRIM. PROC. ANN. art. 44.17 (West 2018).

Even if we were to assume, which we do not, that the State of Texas, through its regulation of persons driving on its public roads, has placed a burden on Appellant's free exercise of religion,[6] our inquiry would not stop there. As the Texas Supreme Court observed:

> The First Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides that Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.] This seemingly straightforward pronouncement has generated volumes of interpretational jurisprudence. . . . The religion clauses are designed to prevent, as far as possible, the intrusion of either [religion or government] into the precincts of the other, and are premised on the notion that both religion and government can best work to achieve their lofty aims if each is left free from the other within its respective sphere. The First Amendment's limitations on government extend to its judicial as well as its legislative branch.

---

[6]The First Amendment states, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend. I. The courts refer to the two "religion clauses" of the First Amendment as the Establishment Clause and the Free Exercise Clause. *See Williams v. Lara*, 52 S.W.3d 171, 186, 192 (Tex. 2001). The facial brevity and seeming clarity of those constitutional protections are belied by copious legal opinions of the nation's courts struggling to find a balance between the religious liberty of believers, and the interests of society.

The Texas constitution provides:

> All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences. No man shall be compelled to attend, erect or support any place of worship, or to maintain any ministry against his consent. No human authority ought, in any case whatever, to control or interfere with the rights of conscience in matters of religion, and no preference shall ever be given by law to any religious society or mode of worship. But it shall be the duty of the Legislature to pass such laws as may be necessary to protect equally every religious denomination in the peaceable enjoyment of its own mode of public worship.

TEX. CONST. art. I, § 6.

*Westbrook v. Penley*, 231 S.W.3d 389, 395 (Tex. 2007) (internal quotations and citations omitted).

Importantly, the Supreme Court of the United States has held that the Free Exercise Clause "does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Emp. Div. v. Smith*, 494 U.S. 872, 879 (1990) (quoting *United States v. Lee*, 455 U.S. 252, 263 n. 3 (1982) (Stevens, J., concurring)), *superseded by statute,* Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb et seq., *as recognized in Ramirez v. Collier*, 595 U.S. 411, 424 (2022); *see also Scott v. State*, 80 S.W.3d 184, 192–93 (Tex. App.—Waco 2002, pet. ref'd). Thus, an individual's religious beliefs do not excuse him from compliance with an otherwise valid law that prohibits (or requires) conduct that the State is free to regulate. *Smith*, 494 U.S. at 879.

"The State may justify an inroad on religious liberty by a showing that it is the least restrictive means of achieving some compelling state interest." *Coyle*, 775 S.W.2d at 847 (citing *Thomas v. Review Board of Indiana Emp. Sec. Div.*, 450 U.S. 707 (1981)). Failing to find a workable balance between the liberty of religious believers and the interests of society "would be to make the professed doctrines of religious belief superior to the law of the land, and in effect to permit every citizen to become a law unto himself." *Smith*, 494 U.S. at 879 (quoting *Reynolds v. United States*, 98 U.S. 145, 166–67 (1878)). Thus, allowing believers an exemption from obeying laws that bind others, without judicially implementing a careful balance, undermines the compelling government interests for which the laws were enacted. *See Cantwell v. Connecticut*, 310 U.S. 296, 303–04 (1940) ("[The First] Amendment embraces two concepts,—freedom to believe and freedom to act. The first is absolute but, in the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society.").

The freedom to act according to one's chosen religious beliefs may be burdened by government action in two respects: (1) through governmental interference with an individual's observance of the practice of a particular faith and (2) through governmental encroachment on the church's ability to manage its internal affairs. *C.L. Westbrook, Jr. v. Penley*, 231 S.W.3d 389, 395 (Tex. 2007) (citing *Church of the Lukumi Babalu Aye, Inc., v. City of Hialeah*, 508 U.S. 520 (1993)). When the actions of the legislature impose on an individual's observance of the practice of a particular faith, we begin by examining whether the law in question is specifically directed at a religious practice. *See Church of the Lukumi Babalu Aye, Inc.*, 508 U.S. at 531. If the law is found to be "neutral and of general applicability," i.e., not directed at a religious practice, then the law "need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Id.* A law is neutral if its purpose is not to infringe upon or restrict one's practices because of their religious motivation. *Id.* at 533. The principle of general applicability protects religious observers against unequal treatment. *Id.* at 542–43. "[I]nequality results when a legislature decides that the governmental interests it seeks to advance are worthy of being pursued only against conduct with a religious motivation." *Id.*

"The use of the public highways by motor vehicles, with its consequent dangers, renders the reasonableness and necessity of regulation apparent." *Coyle*, 775 S.W.2d at 847. "Clearly, there is a compelling state interest in reasonable regulation of the use of the public roadways. Even pedestrians are subject to certain restrictions designed to protect the safety of all who use the roadways." *Id.* We hold that the Texas licensure requirement is the least restrictive means for achieving a compelling state interest in the reasonable regulation of public roadways.

As it relates to the law's requirement of a citizen having to properly identify himself or herself at the request of law enforcement, the safety of the officer and the

10

public and avoiding confusion between offenders and innocent parties is paramount. John Edgar Hoover, a former Director of the Federal Bureau of Investigation, wrote:

> An infallible means of human identification is not only essential to effective law enforcement but also to the achievement of justice. Without the ability to indisputably distinguish one person from another, there would be no certain means to establish an arrested person's identity, to surely determine any previous record of his involvement with crime or, in many cases, conclusively separate the guilty from those who, for whatever circumstance, become innocently enmeshed in the occurrence of crime.

*See* John Edgar Hoover, *The Role of Identification in Law Enforcement: An Historical Adventure*, 46 ST. JOHN'S L. REV. 613, No. 4 (May 1972).

For both offenses, Texas laws' requirements are neutral and are of general applicability. They are not specifically directed at or to a religious practice. Instead, the requirements to hold a valid driver's license to drive on Texas roads and to identify oneself to law enforcement upon request, apply equally and uniformly and is a means of protecting all drivers on Texas roads and the law enforcement officers who have contact with them when a traffic violation is observed. The requirements imposed on Appellant per statute are generally applicable to all drivers and persons who operate motor vehicles on public roadways in the state of Texas. Thus, Appellant's rights under the Free Exercise Clause have not been infringed upon, because the requirements of a license and to properly identify oneself to law enforcement have only an incidental effect, if any, of burdening Appellant's religious practices. *See, e.g.*, *Smith*, 494 U.S. at 878.

We therefore overrule Appellant's first issue regarding jurisdiction and the alleged violation of his First Amendment right to religious freedom.

## II. *Due Process and Appellant's Intent*

Appellant globally argues in his second issue that his due process rights were violated from the "officer's citation to the judicial process," despite Appellant

11

receiving two separate jury trials.[7] Appellant was patiently advised of the trial court's procedures, and the trial court was careful to excuse the jury multiple times while the parties conferred and made arguments to the trial court. We find no discernable appellate argument, wherein Appellant cites relevant authority or identifies specific cites to the record in support of his argument. *See* TEX. R. APP. P. 38.1(i). Even so, we note that, Appellant vaguely complains that he and Trooper White's accounts factually differ on whether Appellant produced identification when requested. While this is hardly a due process complaint, we will address it. The purpose of due process under the Sixth Amendment is to provide the defendant with a fair and impartial trial. *Jones v. State*, 982 S.W.2d 386, 391–92 (Tex. Crim. App. 1998). That was done twice here, thus, we find no error on this point. We overrule Appellant's Due Process claim.

Trooper White testified that identification was requested from Appellant but not provided—rather, Appellant locked himself in his pickup. Trooper White asked for Appellant's identification multiple times. Appellant attempted to hand Trooper White papers that were printed off of the internet. Appellant contends that he stated his name when asked to identify himself and complains that he did not see the video in advance to be able to know whether other parts thereof would be relevant. He does not contend that other current, verifiable identification was produced when requested. Even though the trial court was not required to, Appellant was advised of his "right" to request that the entirety of Trooper White's dashcam footage be played under Rule 107 of the Texas Rules of Evidence. *See* TEX. R. EVID. 107 (rule of optional completeness). Appellant testified, as did Trooper White, about the exchange at the time of the stop. Appellant was free to offer any authenticated video, but he did not do so.

---

[7]Further, he does not claim harm due to lack of notice such as having missed deadlines, failing to appear for trial, or inadequate time to prepare for trial.

The Troopers used their vehicles to block Appellant to keep him from leaving, ran the license plates from Trooper White's vehicle unit computer, which revealed that Appellant did not own the pickup that he was driving. The owner was contacted from whom Trooper White obtained Appellant's name and date of birth. With that information, Trooper White was able to retrieve on the computer an expired identification card that had been issued to Appellant. A factfinder was free to conclude that this information was obtained through the efforts of Trooper White, not as a result of timely identification provided by Appellant. The evidence produced at trial showed that Appellant provided only documents from Appellant's religious organization that misspelled Appellant's name. None of this evidence indicates that Appellant's due process rights were violated during the traffic stop, the trial court's proceedings, or the jury trials.

Accordingly, we find his due process claim meritless and therefore overrule his second issue.

### III. *Constitutionality of Licensing & Identification*

Appellant argues in his third issue, without citing to relevant authority, that the requirement to have a driver's license only applies to operators of *commercial* vehicles and not to noncommercial drivers. Appellant argues that the definition of traffic only applies to commercial vehicles and not vehicles used for personal use, citing to the ninth edition of *Black's Law Dictionary.* We find this point to be without merit. Appellant's interpretation of the statute, taken to its logical conclusion, would mean that all drivers except commercial drivers would be free from state regulation. We can imagine nothing more chaotic and dangerous.

We interpret statutes in accordance with the plain meaning of their language "unless the language is ambiguous or the plain meaning leads to absurd results that the Legislature could not possibly have intended." *Sells v. State*, 121 S.W.3d 748, 761 (Tex. Crim. App. 2003) (citing *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim.

13

App. 1991)). The challenged statute is not ambiguous, and an interpretation of Section 521.021 as applying only to commercial vehicles or drivers of commercial vehicle would lead to absurd results that the legislature could not possibly have intended. A principal purpose of requiring operators to have licenses is to ensure "a minimum of competence and skill on the part of drivers for the protection of persons who might be injured or have their property damaged by negligent or reckless operation of motor vehicles on the highways." *Mundy v. Prie–Slaughter Motor Co.*, 206 S.W.2d 587, 589–90 (Tex. 1947); *see 4Front Engineered Sols., Inc. v. Rosales*, 505 S.W.3d 905, 909 n.6 (Tex. 2016). The Texas Supreme Court has been clear that for a statute's purposes to be realized, its application is not limited in the manner that Appellant now suggests. *See Rosales*, 505 S.W.3d at 909 n.6. At trial, Appellant acknowledged, during the State's cross-examination, a need for states to establish driving requirements including prohibiting "young children" and "legally blind" individuals from driving on public roads, notwithstanding Appellant's wishes to be exempt from government regulation himself.

While Appellant attempts to justify his violations of Texas law by arguing that he refuses to accept privileges from the State, he acknowledged that he utilizes public roadways, paid for by the tax dollars of other Texas citizens. In fact, Appellant's primary theme is that due to his religion, he is unable to enter into any contracts or accept privileges from the State of Texas. This complaint is similar to arguments that he made in *Children of the Kingdom*, which we rejected, *see* 674 S.W.3d at 414–16, and which were made by the appellant in *Coyle* whose arguments were rejected—that the State of Texas' requirement that all drivers on our public roadways be licensed forced them into an "involuntary contract with a 'body of unbelievers' and to split God's sovereignty with another." *Coyle*, 775 S.W.2d at 847. As in this case, the appellant in *Coyle* explained that she could not recognize any authority other than God and that she had revoked all identifying documents that

14

would tie her to a government entity. *Id.* The appellant in *Coyle* further argued that she should be free to move as an "independent sovereign unto herself," and "be allowed to exist free from any authority other than that which she chooses to recognize." *Id.* While we respect Appellant's similar beliefs and arguments, such beliefs and arguments do not exempt him from the laws he violated and for which he was convicted.

In the instant case, Appellant claims that he is entitled to use the public roads of Texas due to a "natural right of locomotion."[8] *Id.* He provides no relevant caselaw in support of this "natural right of locomotion" by automobile on state highways or a "natural right" exempting him from the laws that he violated and that resulted in his convictions. The law is clear that the right "to drive an automobile on the public highways and streets [of Texas] is a privilege and not . . . a property right, and is subject to reasonable regulations under the police power [of the state] in the interest of public safety and welfare." *See Lowe v. Texas Dep't of Public Safety*, 423 S.W.2d 952, 955 (Tex. App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.); *Sanchez-Vasquez v. State*, 610 S.W.3d 36, 43 (Tex. App.—San Antonio 2020, no pet.).

Fortunately, conflicts between the dictates of a man's conscience and the law of the land are resolved through the guarantees of the First and Fourteenth Amendments, but not fully. *See Reynolds*, 98 U.S. at 165; *see also City of Manchester v. Leiby*, 117 F.2d 661, 666 (1st Cir. 1941) (noting that "[t]he civil authority can never concede the extreme claim that police regulations of general application not directed against any sect or creed—however widely the regulation may be accepted as being reasonable and proper—are constitutionally inapplicable

---

[8]Appellant does not claim that this was a private road, that it was not frequented by members of the public (including Appellant), nor that it falls outside of the definition of "highway" as used in Section 521.021 of the Texas Transportation Code. Rather, he claims a "constitutional right of locomotion."

to persons who sincerely believe the observance of them to be 'an insult to Almighty God.'").

Accordingly, we reject Appellant's argument that he should be exempt from the driver's license requirement or the requirement that he identify himself, requirements that apply equally to all creeds. *See Arnold*, 379 N.W.2d at 324. We hold that each requirement furthers the compelling state interest in protecting, regulating, and maintaining public safety through its public roads to be the least restrictive means for doing so. *See Coyle*, 775 S.W.2d at 847.

We overrule Appellant's third issue.

## IV. *False Arrest*

Appellant argues in his fourth recognizable issue that Trooper White falsely arrested him. By their verdicts the jury found that Appellant did not have a driver's license, and that he intentionally refused to give proper identification while he was lawfully arrested or detained because of a traffic stop. *See* PENAL § 38.02; TRANSP. 521.021. Appellant was pulled over for a valid traffic stop due to a defective brake light. Appellant then refused to comply with Trooper White's commands by refusing to exit his pickup and refusing to provide his name or identification. This forced Trooper White to run a computer search of the pickup's registration. Only after an investigative phone call to the rightful owner was Trooper White able to positively identify Appellant.

A peace officer "may arrest an offender without a warrant for any offense committed in his presence or within his view." CRIM. PROC. art. 14.01(b) (West 2015); *see* TRANSP. § 543.001. Driving without a license and failure to identify are arrestable offenses. PENAL § 38.02; TRANSP. §§ 521.021, 543.001; *see also* TRANSP. § 542.501 (a person has committed an offense where, as here, the person "willfully fail[s] or refuse[s] to comply with a lawful order or direction of . . . a police officer."). Accordingly, since the criminal activities of driving without a license and failure to

16

identify occurred in Trooper White's presence, Trooper White was free to lawfully arrest Appellant. *See* CRIM. PROC. art. 14.01; TRANSP. § 543.001. We overrule Appellant's fourth issue.

Like the court in *Coyle,* we have given serious consideration to the issues Appellant presented in his lengthy typewritten brief. 775 S.W.2d at 847. We have considered at length the exercise of First Amendment rights but we conclude that his arguments are overbroad and are not consistent with constitutional interpretation and case precedent. Appellant is free to exercise his right to travel by utilizing public transport, walking, or obtaining rides from individuals with legally recognized drivers licenses. But to operate a vehicle on the public roadways in Texas an individual must be licensed and, upon lawful request from a police officer, an individual must properly identify himself.

*This Court's Ruling*

We affirm the judgments of the trial court.

W. BRUCE WILLIAMS

JUSTICE

September 12, 2024

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.